1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11

GAYLE WINTER,

**Case No. 1:13-cv-01314-GSA**

12

Plaintiff,

13

v.

**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

14

CAROLYN COLVIN, Acting Commissioner of Social Security

15
16

Defendant.

17
18

### I.   INTRODUCTION

19

Gayle Winter ("Plaintiff") seeks judicial review of a final decision by the Commissioner of

20

Social Security ("Commissioner" or "Defendant") denying her application for disability insurance

21

benefits pursuant to Title II and Title VII of the Social Security Act. The matter is currently

22

before the Court on the parties' briefs, which were submitted without oral argument to the

23

Honorable Gary S. Austin, United States Magistrate Judge.[1]  The Court finds the decision of the

24

Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a

25

whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's

26

determination to deny benefits.

27
28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 9).

## II.   FACTS AND PRIOR PROCEEDINGS[2]

On February 19, 2010, Plaintiff filed an application for disability insurance benefits under Title II and supplemental security income under Title VII.  AR 147-158. The application was denied initially on December 1, 2010, and upon reconsideration on May 6, 2011.  AR 72-73; 77-78.  Plaintiff filed a request for a hearing on July 13, 2011.  AR 95-96. The hearing was then conducted before Administrative Law Judge Philip E. Callis (the "ALJ") on March 28, 2012.  AR 39-55.  On April 25, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled.  AR 23-33. On May 23, 2012, Plaintiff filed an appeal of this decision with the Appeals Council.  AR 18-19.  On June 26, 2013, the Appeals Council denied the appeal, rendering the ALJ's decision the final decision of the Commissioner.  AR 1-7.  This appeal followed.

### A.  Plaintiff's Testimony

Plaintiff was born on March 16, 1952, and was sixty years old on the date of the hearing. AR 45, 167.  Plaintiff lives alone in a duplex.  AR 47.  She has a driver's license and she drives to the bank monthly, to the doctor monthly, and to the grocery store every two weeks.  AR 48, 50, 220-21.

She graduated high school and completed two years of college.  AR 193.  Plaintiff worked as a vice president of organizational development at a temporary service company from April 1992 through May 1996.  AR 194.  Plaintiff then worked as a manager of a visitor center from September 1999 through February 2000, as a vice president of organizational development at a furniture store from September 2002 through May 2005, and as a general manager at another furniture store from September 2005 through February 2006.  AR 46, 194.  Subsequently, she worked as a bookkeeper who posted checks at a property management business from January 2007 through April 2007.  AR 45, 194.  She has not worked since that time.  AR 192.

In her applications for benefits, Plaintiff alleges that she suffers from bipolar disorder, depression, anxiety, obsessive compulsive disorder, schizophrenia, posttraumatic stress disorder, tremors, hemolytic autoimmune anemia, low thyroid levels, and a sleep disorder,.  AR 126, 92.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she is unable to work because she has trouble getting out of bed and she forgets what she is doing.  AR 46.  When Plaintiff tried to work in 2007, she had trouble getting to work because her emotional problems caused her to have trouble in the shower and getting dressed.  AR 51.  She testified that her condition worsened during the year prior to the hearing.  AR 52.

When asked about her daily activities, Plaintiff stated that she watches television, although she has trouble concentrating on the storyline; feeds the dog and puts it outside; makes meals for herself, such as TV dinners, sandwiches, and hardboiled eggs; and sometimes sleeps for sixteen to twenty hours a day.  AR 47-49, 219, 221.  She is able to make her bed and do the dishes, but she only does minimal cleaning and laundry because of how long it takes her to do it.  AR 49, 222.  Plaintiff indicated that she does not have the energy to chat; she cannot remember conversations; and she cannot handle stress, crowded stores, and changes in her routine.  AR 223, 224.  Plaintiff stated that she is not very good at concentrating and understanding and following directions.  AR 223.  She stated that spoken instructions would have to be written down.  AR 223.  However, she is able to get along "fine" with authority figures and she has never been fired or laid off because of problems getting along with other people.  AR 224.

**B.  Third Party Testimony**

Plaintiff's friend, Gary Grove, completed the third party function report on June 30, 2010.  AR 255-262.  He stated that Plaintiff cannot do simple tasks and that she spends her days sleeping and watching TV, but she has trouble following the storyline.  AR 255, 259.  Plaintiff's ability to reason and comprehend has decreased and she cannot pay attention for long, which has affected her cooking.  AR 257, 260.  Plaintiff does laundry once a month, goes food shopping every two weeks, and visits her mother monthly.  AR 257-59.

**C.  Medical Evidence**

The entire medical record was reviewed by the Court.  AR 283-530.  The relevant sections of the reports are detailed below.

***Treatment History***

Medical notes in the record reveal that Plaintiff had a long history of bipolar disorder and

1  alcohol abuse.  Plaintiff was seen in April 2006 by Paul McGrew, M.D., and she reported that she

2  had not been to a doctor in more than four years.  AR 284, 313.  At that time, Plaintiff stated that

3  she had been off her medications for several weeks and needed refills.   AR 284, 313.

4          On August 31, 2007, Robert Chin, M.D., treated Plaintiff for complaints of depression.

5  AR 312.  Dr. Chin diagnosed bipolar affective disorder, moderate depression, and "unspecified"

6  alcoholism and prescribed medications.  AR 312.  Dr. Chin noted that Plaintiff had appropriate

7  judgment, mood, and affect, and normal memory.  AR 312.

8          On November 14, 2007, Dr. Chin noted that Plaintiff had appropriate judgment, mood,

9  and affect, but she also had pressured speech and verbosity and was in a manic phase.  AR 309.

10 Dr. Chin switched Plaintiff's medication to Zyprexa.  AR 309.  On November 21, 2007, Dr. Chin

11 observed that Plaintiff's speech was less pressured and noted appropriate judgment, mood, and

12 affect and normal memory.  AR 308.  On December 14, 2007, Dr. Chin noted that Plaintiff's

13 judgment, mood, and affect were appropriate, she was oriented, and her memory was normal.  AR

14 307.

15         In January 2008, Plaintiff reported less inactivity and "[s]till feel[ing] some depression"

16 but "feel[ing] better" since stopping Zyprexa several days earlier.  AR 306.  Dr. Chin again noted

17 appropriate judgment, mood, and affect and normal memory and wrote Plaintiff a new

18 prescription for Celexa.  AR 306.

19         At her March 2008 visit with Dr. Chin, Plaintiff stated that she was sleeping "okay" and

20 not hypomanic.  AR 305.  Plaintiff acknowledged that when she was manic, she over-shopped.

21 AR 305.  Dr. Chin continued Plaintiff on Depakote.  AR 305.  In April 2008, Plaintiff's diagnoses

22 remained unchanged and Dr. Chin wrote Plaintiff a new prescription for Olanzapine-Fluoxetine.

23 AR 304.  In May 2008, Dr. Chin started Plaintiff on a "trial" of Topamax.  AR 303.  In June

24 2008, Dr. Chin encouraged Plaintiff to increase Topamax as tolerated.  AR 302.  Dr. Chin again

25 remarked that Plaintiff had appropriate judgment, mood, and affect and normal memory, and the

26 diagnoses remained unchanged.  AR 302.  In August 2008, Plaintiff reported that she felt

27 unmotivated and that she had stopped drinking alcohol one month earlier.  AR 300.  Dr. Chin

28 noted that Plaintiff had a mildly depressed affect and prescribed Celexa for Plaintiff's depression.

AR 300.  In August 2009, Dr. Chin noted that Plaintiff's judgment, mood, and affect were appropriate, she was oriented, and her memory was normal.  AR 299.

### *Medical Opinions*

1.   M.J. Hetnal, M.D., treating psychiatrist

Dr. Hetnal was Plaintiff's treating psychiatrist beginning in October 2008 and noted that she has had bipolar disorder since 1995.  AR 286-289.  In his October 9, 2008 evaluation, Dr. Hetnal noted that Plaintiff was alert, oriented, and cooperative.  AR 288.  Her speech was somewhat slow with a decrease in volume, but goal oriented.  AR 288.  Plaintiff's mood was depressed and her affect was somewhat restricted.  AR 288.  Plaintiff's cognitive functioning, recent memory, and remote memory appeared intact, but her attention and concentration were somewhat decreased.  AR 288.  Dr. Hetnal diagnosed bipolar disorder with current depressive disorder, ruled out anxiety and panic disorders, and stated that she had alcohol abuse in remission. (AR 288). Dr. Hetnal also noted financial stress and "disability from work" and assigned a Global Assessment Functioning (GAF) score of 50. AR 288. More specifically, Dr. Hetnal stated that Plaintiff had a history of bipolar disorder since 1995 and was "predominantly depressed for the last nine months." AR 289. Dr. Hetnal made no changes to Plaintiff's medications and noted that Plaintiff "remain[ed] disabled from work." AR 289.

During the October 9, 2008 evaluation, Plaintiff reported that she was hypomanic and energetic, but that she had been okay until her boss raped her in 1995 or 1996.  AR 286.  She admitted to "periods of times lasting for a few days at the time with excessive energy, money spending, impulsiveness and lack of sleep."  AR 286.  During one of these periods, she claimed to have purchased six cars.  AR 286.  She reported "feeling increasingly depressed in the last nine months with increasing symptoms in the last three months."  AR 286.  She told Dr. Hetnal that she was sad, unable to enjoy things, felt worthless, slept excessively, and had no energy or motivation. AR 286.  She admitted to crying spells, being isolated, and having suicidal thoughts, but had no intent or plan to kill herself.  AR 290.  She reported tolerating medication well.  AR 287.  She said she worried excessively, experienced one prior panic attack, and acknowledged being "quite angry-verbally."  AR 287.  She denied significant mood swings since 2003, and Dr.

Hetnal observed that she appeared "predominantly depressed." AR 287.  She admitted that Depakote helped with her mood swings, but said that she could not tolerate Seroquel, Wellbutrin, or Topamax.  AR 287.  Plaintiff also admitted to abusing alcohol, having 8 to 10 drinks per day and a history of blackouts, but asserted that she had been sober for the previous 6 months.  AR 287.

On August 2, 2010, Dr. Hetnal completed a mental disorder questionnaire form for Plaintiff intended to summarize Plaintiff's limitations.  AR 330-334.  In several places on the form, however, Dr. Hetnal simply wrote "Review records please."  AR 330-334.  Dr. Hetnal noted that Plaintiff had psychomotor retardation and was tearful and sad.  AR 331.  Plaintiff was lower in concentration and slow in responses.  AR 331.  Plaintiff had a depressed mood, restricted affect, decreased energy, guilt, and anhedonia.  AR 332.  Plaintiff was isolated, staying by herself, withdrawn, had poor attention, and was not involved in daily routines.  AR 333.  Plaintiff was unable to adapt to stress and had poor decision making skills.  AR 333.  Dr. Hetnal diagnosed Plaintiff with bipolar disorder depressed phase, anxiety disorder, and alcohol abuse in remission.  AR 334.  Dr. Hetnal determined that Plaintiff had a poor prognosis and remained disabled from work.  AR 334.

2.      Stanislaus County Behavioral Health and Recovery Services

On July 14, 2010, Stanislaus County Behavioral Health and Recovery Services noted that Plaintiff's stream of thought was clear, her mood and affect were depressed and sad, her judgment and insight were clear.  AR 327.

In January 2012, Plaintiff presented to Darlene Thompson, L.C.S.W., at Stanislaus County Health Services.  AR 447.  Plaintiff reported that she could no longer afford a private psychiatrist and that she was managing her hallucinations better with medication.  AR 447.  Ms. Thompson scheduled Plaintiff for treatment with Dr. Nadolny.  AR 447.  Subsequently, Plaintiff met with Dr. Nadolny and continued treatment with Dr. Hetnal.  AR 443.  In March 2012, Plaintiff reported that her symptoms were improving after medication adjustments, but she still experienced depression.  AR 438.

On March 12, 2012, Plaintiff presented to Stanislaus County Behavioral Health and

Recovery Services Senior Access Group. AR 510-14.  Plaintiff was depressed, but oriented as to person, time, and place.  AR 512.  Plaintiff had a pleasant attitude, logical though flow, fair concentration, normal immediate memory.

### 3. Carol W. Fetterman, Ph.D., consultative examiner

On October 20, 2010, Dr. Fetterman completed a consultative examination of Plaintiff. AR 343-346.  Dr. Fetterman noted that Plaintiff was friendly, cooperative, and interacted appropriately with the examiner and office staff.  AR 343-344.  Plaintiff was alert, fully oriented, had good intelligence, and a depressed mood and affect.  AR 344.  Plaintiff's concentration and attention were good.  AR 344.  She was able to spell "world" forward and in reverse with no mistake and was able to do serial 3's and able to repeat 9 digits forward and 6 in reverse.  AR 344.  Plaintiff has an adequate memory and took one trial to learn 3 words and recalled 2 out of 3 words after a brief delay and remembered the events of 9/11.  AR 344.  Plaintiff's judgment and insight are intact.  AR 344.  When Plaintiff was asked what she would do if she were in Wal-Mart and a small child came up to her crying and saying she was lost, she stated that "[she] would go up to the cashier and have [them] page her mother."  AR 344.

Dr. Fetterman determined that Plaintiff can perform simple and complex tasks.  AR 345. Plaintiff has a good ability to accept instructions and to interact with coworkers and the public. AR 345.  She has no noted social impairments.  AR 345.  However, Dr. Fetterman determined that Plaintiff has a poor ability to maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions from a psychiatric condition, and handle normal work related stress from a competitive work environment.  AR 345.

### 4. Brian Ginsburg, M.D., reviewing physician

On September 28, 2010, Dr. Ginsburg, completed a physical residual capacity assessment and determined that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday.  AR 336-342.

### 5. Daniel Malone, Ph.D., reviewing psychologist

On May 9, 2011, Dr. Malone, completed a case analysis review of Plaintiff's mental

impairments.  AR 426-27.  Dr. Malone stated that he was "unable to agree or disagree with the DDS's affirmation of the Initial level mental FRC/determination [#1] because [he] cannot reliably read Dr. Hetnal's treatment records [#2], particularly the 2011 records following the alleged worsening of the claimant's mental impairments in late 2010."  AR 427.  Dr. Malone recommended "an updated mental disorder questionnaire from Dr. Hetnal (legible writing or typed) to account for any changes from his 8/2/10 opinion of the claimant's functioning since the alleged worsening of her condition in late 2010."  AR 427.

       6.     Paul McGrew, M.D.

On June 27, 2011, Dr. McGrew, examined Plaintiff for back pain that she said had started several years before.  AR 431.  Dr. McGrew observed that Plaintiff came within eight inches of touching her toes and noted tenderness in her lumbarsacral joints.  AR 431.  Dr. McGrew diagnosed lower back lumbago, but indicated that Plaintiff may have had sacroiliitis. AR 431. He recommended an x-ray evaluation in the future and prescribed Hydrocodone-Acetaminophen 5-500 mg for pain.  AR 431.  On February 7, 2012, Dr. McGraw noted that Plaintiff had no spinal tenderness, misalignment, or subluxations.  AR 435.  Dr. McGraw diagnosed degeneration of the lumbar or lumbosacral discs and prescribed Hydrocodone-Acetaminophen 10-325 mg every six hours.  AR 435.  Plaintiff had a Magnetic Resonance Imaging (MRI) of her lumbar spine, sacrum, and coccyx, which showed moderate right-sided hypertrophic facet arthropathy at L4-L4 and L5-S1. (AR 6, 515).

## III.     THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he
> is not only unable to do his previous work, but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work

1   exists in the immediate area in which he lives, or whether a specific job vacancy
    exists for him, or whether he would be hired if he applied for work.

2   42 U.S.C. § 1382c(a)(3)(B).

3       To achieve uniformity in the decision-making process, the Commissioner has established

4   a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

5   404.1520(a)-(f), 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a

6   dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920

7   (a)(4).  The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§

8   404.1527, 404.1529, 416.913.

9       Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

10  substantial gainful activity during the period of alleged disability; (2) whether the claimant had

11  medically-determinable "severe" impairments;[3] (3) whether these impairments meet or are

12  medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

13  Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to

14  perform his past relevant work;[4] and (5) whether the claimant had the ability to perform other

15  jobs existing in significant numbers at the regional and national level. 20 C.F.R. §§

16  404.1520(a)(4), 416.920(a)(4).

17      Using the Social Security Administration's five-step sequential evaluation process, the

18  ALJ determined that Plaintiff did not meet the disability standard.  AR 23-33.  In particular, the

19  ALJ found that Plaintiff had not engaged in substantial gainful activity since December 16, 2009,

20  the amended alleged onset date.  AR 25.  At step two, the ALJ found Plaintiff's hemolytic

21  autoimmune anemia, tremors, posttraumatic stress disorder, obsessive compulsive disorder, and

22  schizophrenia were not medically determinable impairments.  AR 26-27.  He did, however,

23  identify hypothyroidism, anxiety disorder, and bipolar disorder as medically determinable severe

24  impairments.  AR 25. Nonetheless, the ALJ determined that the severity of Plaintiff's

25  _____

26  [3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic
    work activities. See 20 C.F.R. §§ 404.1520(c) and 416.920(c).

27  [4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§
    404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an
    intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486

28  F.3d 1149, 1151 n. 2 (9th Cir. 2007).

impairments did not meet or exceed any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 27.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except she is limited to no more than frequent interaction with supervisors, coworkers and the public.  AR 28. Given these limitations, the ALJ determined that Plaintiff could perform her past relevant work as a bookkeeper.  AR 33.

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Id.

## V.   DISCUSSION

### A.  Evaluation of Medical Evidence

1.   Treating Psychiatrist, Dr. Hetnal

Plaintiff argues that the ALJ improperly rejected the opinion of her treating psychiatrist, M.J. Hetnal, M.D.  Defendant argues that the ALJ properly evaluated the medical evidence because Dr. Hetnal assessed more extreme limitations than the other physicians.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source

10

than to the opinion of doctors who do not treat the claimant.  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  However, a "treating physician's opinion is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) ("the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion").

When the treating doctor's opinion is not contradicted by another doctor, it can be rejected for "clear and convincing" reasons.  Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject it by providing "specific and legitimate reasons" supported by substantial evidence in the record for the rejection.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

Here, the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Dr. Hetnal's opinion.  Specifically, the ALJ noted that Dr. Hetnal's findings were inconsistent with the other medical evidence in the record.  For example, the ALJ noted that Dr. Hetnal's opinion was entitled to little weight because other clinicians have noted that Plaintiff's mental status examinations have been largely normal.  A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion.  Magallanes, 881 F.2d at 751.

Plaintiff asserts that a mental status examination "is not sufficiently sensitive to detect the 'cognitive compromise' caused by Bipolar Disorder."  (ECF No. 17 at 18).  In her reply, Plaintiff argues that "a mental status examination assesses an individual's cognition and serves to rule out dementia."  (ECF No. 25 at 2).  Plaintiff cites an online mini-quiz that presents a scenario and allows the viewer to "vote" on the correct answer for which screening tool may be used to diagnose the patient.  See Mini-Quiz: Psychiatric Screening Tools," Psychiatric Times, http://www.psychiatrictimes.com/bipolar-disorder/mini-quiz-psychiatric-screening-tools#sthash.JsbEBIs1.dpuf (last visited on 8/17/2015).  The website then provides an explanation for the correct answer that states, "The MMSE is not sufficiently sensitive to detect the cognitive compromise now recognized in bipolar disorder."  Id.  The ALJ considers objective evidence, including abnormalities of behavior, mood, thought, memory, orientation, development, or perception.  See 20 C.F.R. §§ 404.1528(b), 1529, 416.928(b), 416.929(a).  The Court finds that

1   Plaintiff has not shown that the ALJ should not have relied on mental status examinations.

2       Plaintiff also argues that the mental status examinations that have yielded normal findings

3   do not reflect the complete picture because bipolar is episodic in nature.  However, the Court has

4   reviewed Plaintiff's treatment notes which span several years and the results of mental status

5   examinations that are in the record, and the Court finds that the results of the mental status

6   examinations are relevant in evaluating Dr. Hetnal's opinion.

7       On July 14, 2010, during an emergency evaluation, Plaintiff was cooperative, had a clear

8   stream of thought, intact impulse control, and intact judgment and insight.  AR 327.  On August

9   7, 2009, January 23, 2008, December 14, 2007, and November 21, 2007, Dr. Chin noted that

10   Plaintiff was oriented, had an appropriate mood and affect, had a normal memory, and had

11   appropriate judgment. AR 299, 306-09, 311.  On October 20, 2010, Dr. Fetterman noted that

12   Plaintiff was cooperative, alert, fully oriented, had intact judgment and insight, no abnormal

13   speech, and a depressed mood and affect.  AR 344.  Therefore, the mental status examinations in

14   the record were inconsistent with Dr. Hetnal's opinion.

15       The ALJ also found that Dr. Hetnal's opinion was inconsistent with his own treatment

16   records.   Inconsistencies between a doctor's opinion and his own reports provide a specific and

17   legitimate reason for rejecting even a treating doctor's opinion.  See Bayliss v. Barnhart, 427 F.3d

18   1211, 1216 (9th Cir. 2005) (finding a discrepancy between a doctor's opinion and his other

19   recorded observations and opinions provided a clear and convincing reason for not relying on that

20   doctor's opinion).  The ALJ noted that Dr. Hetnal fails to note significant objective abnormalities.

21   Dr. Hetnal noted that Plaintiff was alert, oriented and cooperative, had intact cognitive

22   functioning and recent and remote memory, had good insight and judgment, and denied having

23   any hallucinations and suicidal thoughts.  AR 288.  Therefore, Dr. Hetnal's treatment records do

24   not support his conclusions that Plaintiff has psychomotor retardation, slowed responses, and

25   reduced concentration.

26       Plaintiff argues that Dr. Hetnal's treatment notes are so illegible that the ALJ must not

27   have been able to read them and that the ALJ should have contacted Dr. Hetnal.  20 C.F.R.

28   416.912(e) provides direction for an ALJ to recontact a treating physician or psychologist.

However, in this case, the ALJ did not make a finding that the report was inadequate to make a determination regarding Plaintiff's disability. The ALJ disagreed with Dr. Hetnal's report, but did not find that it was inadequate to form a determination regarding disability. Moreover, the ALJ cited to numerous notes by Dr. Hetnal. AR 30. Dr. Hetnal's treatment notes are Exhibits B13F and B23F within the administrative record. The ALJ cites to these exhibits in his analysis on multiple occasions. For example, the ALJ stated that B13F at 11-28, B23F at 1-2, 4, 6-7, 9, 11, 13-14, 17-18, and 20-123 showed that Plaintiff had auditory and visual hallucinations in November 2010, but that this had largely resolved by December 2010. AR 30. The ALJ also stated that Dr. Hetnal noted in B13F at 11-3, 15, 19, and B2F at 1 and 13 that Plaintiff was improving or doing well. AR 30. Therefore, there is no evidence in the record that the ALJ could not read Dr. Hetnal's treatments notes.

In Plaintiff's reply, she argues that the ALJ should have obtained a medical expert opinion as to the nature and severity of Plaintiff's mental impairments after May 2011. (ECF No. 25 at 3). Because the ALJ met his burden identifying conflicting evidence in the record and within Dr. Hetnal's own report, the inconsistencies are clear and convincing reasons for discounting Dr. Hetnal's opinions. Plaintiff has shown, at most, that the evidence before the ALJ could have been interpreted differently, which is insufficient to warrant reversal. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Thus, the ALJ provided specific and legitimate reasons for rejecting Dr. Hetnal's opinion.

### 2. Consultative Examiner, Dr. Fetterman

The ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995) (as amended). As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited

subjective complaints, inconsistency with medical records, inconsistency with a claimant's

testimony, and inconsistency with a claimant's daily activities.  Tommasetti v. Astrue, 533 F.3d

1035, 1040 (9th Cir. 2008).  It is error to ignore an examining physician's medical opinion

without providing reasons for doing so.  An ALJ effectively rejects an opinion when he ignores it.

Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996).

The ALJ gave little weight to Dr. Fetterman's opinion that Plaintiff had a poor ability to

maintain regular attendance in the workplace, complete a normal workday/workweek without

interruptions from psychiatric condition, and to handle normal work-related stress from a

competitive work environment because this was inconsistent with the other evidence in the

record.  AR 32, 345.  As stated above, Plaintiff's mental status examinations have been largely

normal.  On July 14, 2010, during an emergency evaluation, Plaintiff was cooperative, had a clear

stream of thought, intact impulse control, and intact judgment and insight.  AR 327.  On August

7, 2009, January 23, 2008, December 14, 2007, and November 21, 2007, Dr. Chin noted that

Plaintiff was oriented, had an appropriate mood and affect, had a normal memory, and had

appropriate judgment. AR 299, 306-09, 311.  Plaintiff's treating psychiatrist, Dr. Hetnal, noted

that Plaintiff was alert, oriented and cooperative, had intact cognitive functioning and recent and

remote memory, had good insight and judgment, and denied having any hallucinations and

suicidal thoughts.  AR 288.  Therefore, the ALJ properly rejected Dr. Fetterman's opinion

because it was inconsistent with the evidence in the record.

In addition, Dr. Fetterman's clinical findings did not support her opinion.

Dr. Fetterman found that Plaintiff was alert and fully oriented and exhibited good concentration

and attention, adequate memory, intact judgment and insight, intact thought process, and

unremarkable thought content.  AR 344.  Plaintiff was able to spell "world" forward and in

reverse with no mistakes. AR 344. She was able to do serial 3's and was able to repeat 9 digits

forward and 6 in reverse.  AR 344.  She gave an appropriate response when asked what she would

do if she was in a store and a child was lost.  AR 344.  Therefore, Dr. Fetterman's clinical

findings do not support the limitations that she found for Plaintiff.  Accordingly, the ALJ

provided clear and convincing reasons for rejecting Dr. Fetterman's opinion.

**B.   The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's testimony**

Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding her testimony not credible.  (Doc. 17).  Defendant counters that the ALJ properly determined that Plaintiff was not credible because he provided clear and convincing reasons, supported by substantial evidence in the record, for his credibility determination.  (Doc. 21).  A review of the record reveals the ALJ properly assessed Plaintiff's credibility.

When evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

If the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Comm'r of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief;

functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278

F.3d at 958.  In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

statements concerning the symptoms, and other testimony by the claimant that appears less than

candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment. . . ."  Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at

1284). Other factors the ALJ may consider include a claimant's work record and testimony from

physicians and third parties concerning the nature, severity, and effect of the symptoms of which

he complains. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found that Plaintiff had severe impairments that could be expected to cause

some of the alleged symptoms.  AR 29.  However, the ALJ found that Plaintiff's statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the

extent they are inconsistent with the above residual functional capacity assessment."  AR 29.

This finding satisfied step one of the credibility analysis.  Smolen, 80 F.3d at 1281-82.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide

clear and convincing reasons for rejecting Plaintiff's testimony.  Brown–Hunter, —— F.3d ——.

2015 WL 4620123 at *5 (9th Cir. Aug. 4, 2015); Smolen, 80 F.3d at 1283–84; Lester, 81 F.3d at

834.

The reasons that the ALJ cites for finding Plaintiff not credible are specific, clear, and

convincing.  First, the ALJ found that there was little objective evidence to support Plaintiff's

statement that she cannot work because of symptoms associated with her mental impairments,

including difficulty performing daily tasks, mood fluctuations, and episodes of anger.  AR 30.

The ALJ noted that Plaintiff's treating psychiatrist since October 2008 "has observed

abnormalities in her mental status on only a few occasions since the date she alleges she became

disabled and these have been limited to slight disturbances in mood and affect" and more often

noted "that she is improving or doing well."  AR 30.  The ALJ reviewed that medical evidence

and reasonably determined that it did not fully support Plaintiff's alleged symptoms and

limitations.  This was a valid reason to reject Plaintiff's subjective symptom testimony.  See

16

Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Second, the ALJ found that Plaintiff was not credible because there is evidence implying that she is not entirely compliant with her medications.  AR 30.  It is true that an "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can constitute an appropriate reason to disbelieve a Plaintiff. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).  However, an ALJ cannot discredit a plaintiff for failing to seek psychiatric treatment when the failure is due to the plaintiff's mental impairment.  Molina, 674 F.3d at 1114. Here, Plaintiff has bipolar disorder which may have contributed to Plaintiff's failure to follow treatment recommendations.

Similarly, the ALJ noted that Plaintiff's symptoms are exacerbated when she does not take her medications.  AR 30.  When considering symptoms of mental disorders, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and nature of [his] symptoms."  Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).  Mental health treatment notes must be "interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean the claimant can function effectively in the workplace."  Id.  Further, exercising caution in inferring from treatment notes that a claimant is able to work is "especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work."  Id.

Even if Plaintiff's noncompliance with medications and improvement of symptoms with medications were not specific, clear, and convincing reasons for discrediting Plaintiff's testimony, any error was harmless, because the ALJ gave other specific, clear, and convincing reasons for finding Plaintiff incredible.

The ALJ found that Plaintiff's statement that she sleeps for most of the day is inconsistent with her own statements and the evidence in the record.  AR 31.  The ALJ noted that Plaintiff

17

does a variety of activities around the house and attends regular medical appointments and that no doctors have indicated that she appears particularly fatigued or drowsy, which suggests that her fatigue is not as severe as she alleges.  AR 31.  These inconsistent statements are a proper basis to reject a claimant's credibility. See Bray v. Commissioner of Social Security, 554 F.3d 1212, 1227 (9th Cir.2008) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, ... among other factors."); Tommasetti, 533 F.3d at 1039 (An ALJ may rely on ordinary techniques of credibility evaluation such as prior inconsistent statements, and other testimony by the claimant that appears less than candid.); Smolen, 80 F.3d at 1284 (An ALJ may consider a claimant's inconsistent statements).

In sum, the ALJ's credibility findings were thoroughly explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that decision.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  By considering Plaintiff's inconsistent statements and the lack of objective medical evidence, the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints.  Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  See Burch, 400 F.3d at 680-81.  Accordingly, the ALJ's credibility determination was proper.

### C.   The ALJ provided reasons germane to Gary Grove for rejecting his testimony

Plaintiff also challenges the ALJ's rejection of a third party statement by Gary Grove, the Plaintiff's friend.  Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account.  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly by providing "reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  An ALJ can disregard a third party statement, for example, that "conflicts with medical evidence."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

18

2001). Similarly, lay witness testimony can be discounted if there is substantial evidence of "[b]ias and financial motive." Perkins v. Colvin, 45 F.Supp.3d 1137 (D. Ariz. 2014) (citing Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). To reject lay testimony, "the ALJ need not cite to the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted." Caldwell v. Astrue, 804 F.Supp.2d 1098, 1104 (D. Or. 2011).

Mr. Grove's statements mirrored Plaintiff's testimony, and the ALJ rejected Mr. Grove's statements for the same reasons that he rejected Plaintiff's statements. AR 31. An ALJ need not reconsider each witness individually; "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 F.3d at 1114 (citing Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

As discussed above, the ALJ discredited the Plaintiff's testimony because it conflicted with the objective medical evidence in the record. An ALJ may reject lay opinion evidence where it is inconsistent with the medical evidence of record. See Bayliss, 427 F.3d at 1218 (holding that inconsistency with medical evidence is a germane reason for discrediting lay witness testimony); Lewis, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

Mr. Grove stated that Plaintiff's ability to reason and comprehend was greatly diminished. However, multiple mental status examinations indicated that Plaintiff had appropriate and intact judgment, intact insight, and intact thought process and clear stream of thought. AR 288, 299, 306-309, 311, 327, 344. Mr. Grove's statements did not support Plaintiff's testimony about her daily activities. Plaintiff testified that she could prepare simple meals, care for her dog, drive, shop for groceries, and go to the bank. AR 47-50.

Accordingly, the ALJ properly relied upon the fact that Plaintiff's activities did not support Mr. Grove's statements and the inconsistencies between Mr. Grove's statements and the medical records to reject Mr. Grove's lay witness testimony which suggested greater limitations than what the ALJ determined for the RFC.

/ / /

**D.  Plaintiff's Back Impairment**

Plaintiff argues that the ALJ should have considered her back impairment at step two. Plaintiff also alleges that the Appeals Council failed to consider her new and material evidence. After the ALJ issued his decision, but before the Appeals Council considered the decision, Plaintiff submitted a March 6, 2012 MRI of Plaintiff's lumbar spine which showed moderate right-sided hypertrophic facet arthropathy.  AR 515.

The Court has considered the MRI of Plaintiff's back in conjunction with the rest of the record in reviewing the ALJ's decision.  It is important to note that Plaintiff did not allege a back impairment in her applications.  AR 192, 229.  Plaintiff did not mention a back impairment or any kind of physical impairment at the hearing before the ALJ.  AR 41-55.  Also, Plaintiff told Dr. Fetterman that she did not have physical limitations because of her medical problems.  AR 344. Plaintiff did not complain of a back impairment and did not present evidence to show that a back impairment affected her ability to work.  Therefore, it was not error for the ALJ to not discuss a back impairment for Plaintiff at step two.

Federal courts "do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).  Once a party submits new and material evidence that relates to the period on or before the ALJ's decision to the Appeals Council, however, "that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  Brewes, 682 F.3d at 1163.  In evaluating the ALJ's decision, the Court considers the evidence Plaintiff submitted to the Appeals Council.  As explained by the Brewes court, however, the Court cannot remand based solely on the actions of the Appeals Council, nor can it hold that it was error for the Appeals Council not to comment on the new evidence.  Brewes, 682 F.3d at 1162-1163.  Plaintiff must show that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing.  See Booz v. Sec'y of Health & Human Servs., 734 F.3d 1378, 1380-81 (9th Cir. 1983).

1   Here, the ALJ found that Plaintiff had the RFC to perform medium work.  Dr. Ginsburg, a

2   state agency physician, found that Plaintiff could still perform medium work.  AR 335-39.

3   Plaintiff has not presented any evidence that her back impairment created additional limitations

4   beyond the finding that she could perform medium work.  Therefore, Plaintiff has not shown that

5   there was a reasonable probability that her lumbar spine MRI would have changed the outcome of

6   her hearing, and the Court will not remand on this issue.

7        **E. The ALJ's Development of the Record**

8        Plaintiff argues that the ALJ had a duty to develop the record with respect to the

9   psychiatric testimony in the record because Dr. Hetnal's notes were illegible and the ALJ rejected

10  the other psychiatric opinions in the record.  Plaintiff also asserts that the ALJ should have

11  developed the record with respect to the Plaintiff's back impairment.

12       An ALJ has a duty to "fully and fairly develop the record and to assure that the claimant's

13  interests are considered."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty

14  is triggered when there is "[a]mbiguous evidence" or on "the ALJ's own finding that the record is

15  inadequate to allow for proper evaluation of the evidence."  Id.  Once the duty is triggered, the

16  ALJ must "conduct an appropriate inquiry," which can include "subpoenaing the claimant's

17  physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

18  the record open after the hearing to allow supplementation of the record."  Id.

19       However, an ALJ "does not have to exhaust every possible line of inquiry in an attempt to

20  pursue every potential line of questioning."  Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir.

21  1997) ("The standard is one of reasonable good judgment").  Indeed, an ALJ is only required to

22  conduct further inquiries with a treating or consulting physician "if the medical records presented

23  to him do not give sufficient medical evidence to determine whether the claimant is disabled."

24  Johnson v. Astrue, 627 F.3d 316, 319-20 (8th Cir. 2010).  The duty to develop the record is

25  typically triggered where, for example, a claimant's medical records are incomplete or there is an

26  "issue sought to be developed which, on its face, must be substantial."  Flaherty v. Astrue, 515

27  F.3d 1067, 1071 (10th Cir. 2007).

28       Plaintiff argues that the ALJ had a duty to develop the record because Dr. Hetnal's notes

1  are largely illegible.  As discussed above, the ALJ did not indicate that he could not read Dr.

2  Hetnal's treatment notes.  In fact, the ALJ summarized several of Dr. Hetnal's treating records in

3  his decision.  AR 30-31.  Therefore, there was no evidence in the record that the ALJ could not

4  read Dr. Hetnal's notes, and the ALJ did not have the duty to develop the record on this issue.

5      Plaintiff asserts that the ALJ should have developed the record because the ALJ rejected

6  all of the psychiatric opinions in the record.  The ALJ must avoid substituting his own opinion for

7  that of the treating physician without relying on medical evidence or authority in the record.  See

8  20 C.F.R. § 416.927(d)(2).  However, here, the ALJ did not substitute his own opinion.  The ALJ

9  found that the evidence supported a portion of Dr. Bilik's opinion and gave that portion of the

10  opinion some weight.  The ALJ agreed with Dr. Bilik's assessment that Plaintiff can "understand,

11  remember and carry out simple and detailed instructions over the course of a normal workweek,

12  adapt, and interact appropriately with others."  AR 31.  The ALJ found that Plaintiff was more

13  limited than Dr. Bilik's assessment in terms of Plaintiff's ability to interact with others.  AR 32.

14  The ALJ agreed with Dr. Fetterman's opinion that Plaintiff can do complex tasks.  The ALJ's

15  RFC was also consistent with Dr. Fetterman's assessment that Plaintiff "has a good ability to

16  interact with supervisors, coworkers, and the public, and can perform work activities on a

17  consistent basis without special or additional instruction."  AR 28, 32.  For the reasons stated

18  above, the ALJ properly provided reasons for rejecting Dr. Hetnal's opinion and portions of Dr.

19  Fetterman's opinion and properly calculated Plaintiff's RFC.  Therefore, the ALJ did not

20  improperly substitute his own opinions for the psychiatric opinions in the record.

21      Lastly, the ALJ did not need to develop the record further in regards to Plaintiff's back

22  impairment.  As stated above, Plaintiff did not allege a back impairment in her applications,

23  during her consultative examination, or during the administrative hearing.  AR 41-55, 192, 229,

24  344.  Although there was evidence in the record of Plaintiff having back pain, Plaintiff did not

25  present any evidence to the ALJ or complain to any of her doctors that a back impairment

26  affected her ability to work.  Therefore, the ALJ did not have a duty to develop the record further.

27  **VI.    CONCLUSION**

28      Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff, Gayle Gwen Winter.


IT IS SO ORDERED.

    Dated:   **August 21, 2015**                   **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE